

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHEILA BELLIZAN and JOHNETTA MCMAHON,  and others similarly situated,<br>Plaintiffs, | CIVIL ACTION NO. 00-2949 |
| versus | SECTION "C"<br>JUDGE BERRIGAN |
| EASY MONEY OF LOUISIANA, INC., EASY MONEY HOLDINGS, INC., EASY MONEY OF VIRGINIA, INC., DAVID L. GREENBERG, TAMMI VAN GORDER and JEROME GREENBERG,<br>Defendants. | MAGISTRATE 1<br>MAGISTRATE JUDGE SHUSHAN |

## DEFENDANTS' OPPOSITION TO
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Defendants Easy Money of Louisiana, Inc. ("Easy Money Louisiana"), Easy Money Holdings, Inc., Easy Money of Virginia, Inc., David L. Greenberg, Tammi van Gorder and Jerome Greenberg, submit this opposition to Plaintiffs' Motion for Class Certification, which should be denied, because Plaintiffs, Sheila Bellizan ("Bellizan") and Johnetta McMahon ("McMahon"), have failed to satisfy any of the requirements of Rule 23(a) and (b), Fed.R.Civ.P.

Bellizan and McMahon seek the certification of five ill-defined and overbroad proposed classes of persons who contracted for "payday loans" from Easy Money Louisiana.  Plaintiffs essentially contend that they were charged excessive interest and

other loan fees.  Plaintiffs would improperly require this Court to render a ruling on the merits of this case prior to certifying any of the classes, as the so-called class "definitions" and membership presume a  determination on the merits.  Further, the named plaintiffs lack standing, typicality, and adequacy, and a class action is not at all superior to other available methods for resolving this controversy.

Although Bellizan and McMahon failed to move for certification under Rule 23(b)(1)(A) or (B), they argue that the requirements of Rule 23(b)(1)(A) have been met. The plaintiffs have not, however, demonstrated that certification under (b)(1)(A) is appropriate.   Although the plaintiffs did move for certification under Rule 23(b)(2), the relief requested is for monetary damages, and injunctive relief is not available under RICO. The plaintiffs have not moved for certification under Rule 23(b)(3), but even if they had, their individual claims predominate over the common claims of the purported classes, and a class action is manifestly not a superior method to resolve this controversy.  This case is uniquely unsuitable for class certification.

## I.    Standard for certification and plaintiffs' burden of proof

### A.    Standard for certification

This Court must conduct a "rigorous analysis of the proposed class and must verify that the class, if certified, meets all requirements imposed by Rule 23." *See, e.g., General Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).   Courts should not certify lightly. *McClain v. Lufkin Indus.*, 187 F.R.D. 267, 277 (E.D. Tex. 1999).  "Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order

to make a meaningful determination of the certification issues." *Castano*, 84 F.3d at 744; *Burrell v. Crown Central Petroleum, Inc.,* 197 F.R.D. 284, 286 (E.D. Tex. 2000) (the court "must consider the substantive law" and "may look past the pleadings and other completed discovery to make the certification decision"). The Court must have sufficient evidence to support any determination that certification is authorized.[1] Where, as here, the record is inadequate, certification should be denied. *See, e.g., Bradford v. Sears, Roebuck & Co.,* 673 F.2d 792, 796 (5th Cir. 1982) (vacating certification on interlocutory appeal).

### B.    Plaintiffs' burden of proof

Bellizan and McMahon, as the parties seeking certification, bear the burden of proof on all certification issues. *Castano*, 84 F.3d at 740; *Applewhite v. Reichhold Chems., Inc.,* 67 F.3d 571, 573 (5th Cir. 1995). "In order to maintain a class action, a representative suit must comply with the requirements of each of the four subsections of Rule 23(a) and must satisfy the additional requirement of at least one of the three subdivisions of Rule 23(b)." *Ford v. NYLCare Health Plans of the Gulf Coast, Inc.,* 190 F.R.D. 422, 425 (S.D.Tex. 1999). The failure of Bellizan and McMahon to establish any one requirement will completely defeat the certification effort. *Buford v. H&R Block*, 168 F.R.D. 340, 348 (S.D. Ga. 1996). Additionally, each subclass "must independently meet all of rule 23's requirements for maintenance of a class action." *Johnson v. American Credit Co. of Georgia*, 581 F.2d 526, 532 (5th Cir. 1978); *accord Chisholm v. TransSouth Finan. Corp.,*

---

[1]    *See* Federal Judicial Center, *Manual for Complex Litigation* (3d ed.) ("*MCL*") at § 30.11 ("The court's principal concern should be to develop a record adequate to enable it to decide whether the prerequisites of Rule 23 have been met." The Fifth Circuit has cited this section of the *MCL* with approval. *Castano*, 84 F.3d at 744. *See also General Tel. Co. v. Falcon,* 457 U.S. 147, 157-60 (1982).

194 F.3d 538, 558 (4th Cir. 2000).

The court "is not to bear the burden of 'constructing subclasses' or otherwise correcting Rule 23(a) problems; rather, the burden is on Plaintiffs." *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001); *accord Heaven v. Trust Co. Bank,* 118 F.3d 735, 738 (11th Cir. 1997) ("The district court has no *sua sponte* obligation to subclassify; it is the plaintiff's burden to designate an appropriate class.") (citing *United States Parole Comm'n v. Geraghty,* 445 U.S. 388 (1980)). Each cause of action must independently meet all of the Rule 23 class certification standards. *Kirkpatrick v. Bradford & Co., 827* F.2d 718, 726 (11th Cir. 1987) (The district court improperly failed to "consider separately the appropriateness of the class action treatment" of each of plaintiff's causes of actions.)

## II.      Threshold analyses: class definition and standing requirements

### A.      Class definition requirement

As a prerequisite to a Rule 23 analysis, "the Court must first consider whether a precisely defined class exists and whether the named plaintiffs are members of the proposed class." *Edwards v. McMormick,* 196 F.R.D. 487, 490-91 (S.D. Ohio 2000); *see also Garrish v. United Automobile, Aerospace, and Agricultural Implement Workers of America*, 149 F.Supp. 2d 329, 330-31 (E.D. Mich. 2001) ("Before the Court may certify a class pursuant to Rule 23, 'the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.'") (quoting 5 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE ¶ 23.21[1] (3d ed. 1998)).

The plaintiffs' effort to certify a class is entirely unfocused and scattered. Indeed,

4

plaintiffs seek certification of <u>five</u> ill-defined classes, each of which must be separately analyzed, and none of which may be certified:

> Class A: consisting of all persons who entered into loan transactions with defendants in the State of Louisiana wherein loan proceeds totaling less than $500.00 were obtained within the period beginning one year prior to the date of the fling of this Complaint (which defendants refer to below as the "All Customers Class");

> Class B: consisting of all persons [described in Class A] and, at the time any such loan became due, the borrower was allowed to continue the loan into effect by becoming obligated for an additional set of fees of like kind and amount to the original loan (which defendants refer to below as the "Rollover Subclass") ;

> Class C: consisting of all persons [described in Class A] who have, at any time during the class period, had two or more transactions in effect concurrently where the sum of all fees, charges and/or interest charged by defendant exceeded $45.00 (which defendants refer to below as the "Split Transaction Subclass");

> Class D: with respect to Count Three of the Complaint, consisting of all persons who entered into loan transactions with defendants wherein loan proceeds totaling less than $500.00 were obtained within the period beginning four years prior to the date of filing of this Complaint (which defendants refer to below as the "RICO Damages Subclass");

> Class E: with respect to injunctive relief, a class of persons "entitled to protection under 18 U.S.C. § 1964(c) comprised of all persons with whom defendants have entered into a loan transaction with terms inconsistent with the provisions of the Louisiana Deferred Presentment and Small Loan Act and who have not yet paid the entirety of principal, interest and all other fees sought to be charged by defendants, which class should be certified pursuant to Federal Rule of Civil Procedure 23(b)(2) (which defendants refer to below as the "RICO Injunction Subclass").

Plaintiffs' Motion for Certification at 2-3 (unpaginated).

The classes proposed by Bellizan and McMahon defy definition and thus certification:

> The proposed class must be precisely defined and its members must be ascertainable through the application of "stable and objective factors" so that a court can decide, among other things, "who will receive notice, who will share in any recovery, and who will be bound by the judgment."  The ascertainability requirement is not satisfied when the class is defined simply as consisting of all persons who may have been injured by some generically described wrongful conduct allegedly engaged in by a defendant.  That is especially true when the conduct consists of a series of discrete acts that vary in nature and are committed over a protracted period of time.

*Van West v. Midland Nat. Life Ins. Co.,* 199 F.R.D. 448, 451 (D.R.I. 2001) (citations omitted).   Further, a class cannot be established unless it is "administratively feasible to determine whether a given individual is a member of the class." *Mueller v. CBS, Inc.,* 200 F.R.D. 227, 233 (W.D. Pa. 2001).  In *Mueller,* the court properly refused to certify a class defined as individuals who were allegedly wrongfully terminated so that they were precluded from collecting their pension benefits. *Id.* at 233.  The court cogently noted that, in order to establish class membership, a putative plaintiff would have to demonstrate that the defendant wrongfully selected him for termination. *Id.*  The court found that determining class membership would require, as here,  a "mini-hearing on the merits of each class member's case, which itself renders a class action inappropriate for addressing the claims at issue." *Id.* (citation omitted).

In this case, the proposed All Customers Class, as discussed below, consists of every Easy Money Louisiana customer who obtained a loan during a one-year period.  In order to define this proposed group as a class, the court would have to reach the central issue of liability in this case and determine whether all of Easy Money Louisiana's loans to all of its customers are lawful.  The same holds true for the RICO Damages Subclass,

6

only for an even longer time.[2]

Membership in the Rollover Subclass and the Split Transaction Subclass would require a separate mini-trial on the factual circumstances of each customer's transactions with Easy Money Louisiana.  Classes D and E, relating to plaintiffs' RICO claims, would also require this Court to (1) determine whether injunctive relief is available under RICO and (2) conduct a plethora of mini-trials on plaintiffs' claims that defendants violated RICO.

Easy Money Louisiana propounded discovery requests to Bellizan and McMahon in an attempt to resolve the definition and scope problems.  The plaintiffs' responses were utterly deficient and confirm that class certification is not appropriate.  Bellizan and McMahon ignored several interrogatories; while other responses relate to a class action plaintiffs' counsel is apparently litigating in another state.[3]  *See* Johnetta McMahon and Sheila Belllizan's Responses to Defendants [sic] First Set of Interrogatories and Requests for Production, attached hereto as Exhibit A and B, respectively.  The plaintiffs have also not filed affidavits or offered any other evidence in support of their motion for certification.

The proposed classes are not precisely defined and, therefore, the putative class members are not ascertainable.   Even if the classes were properly defined, this Court would be required to conduct mini-trials on each putative class member's factual

---

[2]     The court would have to determine if each payday loan to every class member was at twice the maximum lawful interest rate to constitute collection of an unlawful debt under RICO.  *See* 18 U.S.C. § 1961(6).

[3]     McMahon's response to Interrogatory Q, which asks her to "state with precision the scope and definition of each class or subclass," is: "Up to the attorneys."  Bellizan answers the same interrogatory as follows: "I understand that my attorneys have described these classes in their motion to the court so that I will defer to their definition."  Plaintiffs' Responses to Defendants [sic] First Set of Interrogatories and Requests for Production at ¶ Q, attached hereto as Exhibit A and B.

circumstances to determine whether class membership is established.

**B.    Standing requirement**

"[P]rior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Murray v. Auslander,* 244 F.3d 807, 810 (11th Cir. 2001) (citation omitted).  Neither of the named plaintiffs in this case has standing to raise any class subclaim.   It is well settled in this circuit that merely pleading that there may be class members who have suffered the harm alleged as to each of the five putative classes in this case is insufficient:

> Inclusion of class action allegations in a complaint does not relieve a plaintiff of himself meeting the requirements for constitutional standing, even if the persons described in the class definition would have standing themselves to sue.  If the plaintiff has no standing individually, no case or controversy arises.

*Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. 1981).

Bellizan and McMahon have no standing to represent the proposed All Customers Class and the RICO Damages Class.  Because the fees charged to McMahon and Bellizan were proper, they have no claim.[4]  As to the Rollover Subclass, neither named plaintiff in this case had rollover transactions.[5]  As to the purported Split Transaction Subclass, Bellizan never had more than one loan at a time, so she cannot possibly be a member of

---

[4]    Pages 22-27 and 31-32 of the memorandum in support of the motion for summary judgment filed by Easy Money Louisiana, doc. no. 67, establish that the fees charged to and paid by Bellizan and McMahon were authorized by law.  All of the authorities and exhibits from the motion for summary judgment are incorporated by reference herein.

[5]    Pages 27-29 of Easy Money Louisiana's memorandum in support of motion for summary judgment establish that Bellizan and McMahon engaged in no rollover transactions.

8

this class.  McMahon never had any improper split transaction, as established by Easy Money Louisiana's motion for summary judgment.[6]  As to the RICO Injunction Subclass, Bellizan has paid off her 1999 loans to Easy Money Louisiana, so she cannot be a member of this class.  Moreover, no plaintiff could enjoin Easy Money Louisiana from collecting legitimate interest and other charges.  The RICO Injunction Class could only be certified after a merits determination.

In *James v. City of Dallas, Texas*, 254 F.3d 551(5th Cir. 2001), the Fifth Circuit recently revisited standing in the context of a race discrimination action alleging that the city's demolition program was unlawful.  Noting that standing "must be addressed on a claim-by-claim basis," the court found that the plaintiffs lacked standing for several requested injunctive remedies.  *Id.* at 563.  The court found that the plaintiffs' proposed class entitled to an injunction against future demolitions failed because the named plaintiffs did not own undemolished property that would be subject to the proposed injunction.  *Id.* at 564-65.  Similarly, the named plaintiffs in *James* did not have standing to seek the return of money and interest paid for demolition costs because they had not alleged that they had expended such sums.  *Id.* at 565.  Nor did the *James* plaintiffs have standing to request that the city be ordered to set aside all foreclosures, because they did not allege that their property was subject to foreclosure.  *Id.*

Bellizan and McMahon clearly lack standing; neither named plaintiff is a member of any of the proposed classes.  This threshold requirement warrants a denial of the

---

[6]     Pages 8, 10, and 32-34 of Easy Money Louisiana's memorandum in support of summary judgment establish that Bellizan and McMahon did not enter into any prohibited "split transactions" with Easy Money Louisiana.

9

motion for certification.

**III.    Bellizan and McMahon have not met the requirements of Rule 23(a).**

The putative class has not and cannot satisfy "the four threshold requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *Smith v. Texaco, Inc.*, 88 F.Supp. 2d 663, 672 (E.D.Tex. 2000).

**A.    Bellizan and McMahon have not met the numerosity requirement.**

The plaintiffs' bald assertion that "thousands of persons [are] affected," and that defendants "operate offices engaged in making these small loans throughout the state of Louisiana" does not satisfy the numerosity requirement of Rule 23(a)(1). Plaintiffs' Motion for Certification at 15. It is well established that, while a plaintiff need not be able to establish numerosity by a precise figure, "[m]ere supposition, like that offered by Plaintiffs here, is not enough to satisfy Rule 23(a)'s numerosity requirement." *Edwards v. McCormick,* 196 F.R.D. 487, 494 (S.D. Ohio 2000).

In *Griffin v. GK Intelligent Systems, Inc.,* 196 F.R.D. 298 (S.D. Tex. 2000), the plaintiffs filed a securities fraud action, defining the class as consisting of "all investors who purchased shares from GK Intelligent Systems, Inc, between February 10, 1998 and September 14, 1998." *Id.* at 300. The court found that the plaintiffs had not satisfied the numerosity requirement, reasoning that:

> Plaintiffs assert that as of September 10, 1998, four days before the end of the class period, there were 458 record shareholders. Plaintiffs do not present evidence regarding how many of these 458 shareholders purchased their shares during the class period. Plaintiffs do not present evidence regarding how many of these 458 shareholders are among the group of investors excluded from Plaintiffs' class definition.

*Id.* at 301.

In the instant case, the proposed All Customers Class clearly fails. Bellizan and McMahon claim that every one of the thousands of customers who transacted with Easy Money Louisiana during the twelve-month period preceding the filing of the Complaint is a member of proposed Class A. This class "definition" does not even allege that a group of individuals exists who have suffered redressable harm by entering into "payday" loans with Easy Money Louisiana, or that the loans were at excessive rates. If the plaintiffs' vague and overbroad definition relates to a claim that all Easy Money Louisiana loans violated Louisiana law, this claim is central to the liability claims in this case and is not established in any way. Easy Money Louisiana maintains that the terms of its small loans complied with Louisiana statutory requirements and that, therefore, there is no member of Class A. Bellizan and McMahon cannot, therefore, establish numerosity by pointing to all of Easy Money Louisiana's loan customers.

Moreover, the exhibits to the Easy Money Louisiana motion for summary judgment also show that Easy Money Louisiana used a variety of different loan documents, and charged different fees and rates at various times. These differences in the small loan transactions also prevent certification based on numerosity and inadequate class definition.

As to the proposed Rollover Subclass, there is no identifiable class member. Neither named plaintiff had a roll-over transaction, and Bellizan and McMahon have not identified any other customers who allegedly entered into a rollover transaction. The plaintiffs' assertion that there are putative members of the proposed Rollover Subclass is

pure speculation and beside the point, as they have no standing.

As to the proposed Split Transaction Subclass, only McMahon has alleged that she entered into an improper split transaction. The summary judgment evidence refutes this allegation; however, any estimate of putative class members in the proposed Split Transaction Subclass and Rollover Subclass would be pure speculation, and would require numerous mini-trials.

The proposed RICO Damages Subclass, consisting of all persons who transacted small loans with Easy Money Louisiana for four years prior to the filing of the Complaint, is as ill-defined and even more overbroad than the All Customers Class. The Rico Injunction Subclass fails because injunctive relief is not available under RICO to a civil plaintiff, and there is no showing of any putative class members in Class A or D who still owe money to Easy Money Louisiana.

In *McGee v. East Ohio Gas Co.,* 200 F.R.D. 382, 386 (S.D. Ohio 2001), the plaintiff filed suit against a utility company, alleging that its practices in dealing with applicants' credit in denying service was unlawful. The plaintiff sought to certify a class defined as "[a]ll persons since August 12, 1997 who were or will be 'applicants' for gas service from defendant" and who were creditworthy under certain standards. *Id.* at 388. The court found that numerosity as to this class had been satisfied. *Id.* The court declined, however, to certify a subclass including "only those individuals who have had their accounts improperly consolidated because of their marital status." *Id.* at 392. The court based its refusal to certify the subclass in part on the fact that the evidence demonstrated that "such a subclass may well count [the plaintiff] as its only member." *Id.* The court found that the

12

plaintiff could not "satisfy the numerosity requirement of Rule 23(a) without improperly relying on pure speculation." *Id.*

In the instant action, Bellizan and McMahon have not demonstrated that there are any class members, let alone a number sufficient to satisfy Rule 23(a)(1).  The court should decline to certify any of the proposed classes on the basis that the plaintiffs have not met their burden of proving numerosity under Rule 23(a)(1).

**B.      Bellizan and McMahon have not met the commonality requirement.**

Bellizan and McMahon cannot meet the commonality requirement of Rule 23(a)(2), notwithstanding that it is a less stringent standard than the commonality test of Rule 23(b)(3).  Commonality is "satisfied if there exist questions of fact or law common to all members of the prospective class," questions that arise "from a common nucleus of operative facts."  *Mueller v. CBS, Inc.*, 200 F.R.D. 227, 235 (W.D. Pa. 2001)(citation omitted).

Consistent with the overbroad and scattered definitions of the proposed subclasses, Bellizan and McMahon have vaguely alleged the "common issues" in this case as "whether defendants engaged in a common course of conduct designed to loan money to Louisiana customers at usurious rates of interest."  Plaintiffs' Memorandum in Support of Motion for Class Certification ("Plaintiffs' Memorandum") at 5-6.    Easy Money Louisiana has attempted to obtain a more precise definition of the alleged common issues of fact and law through discovery, but the plaintiffs' responses were intentionally vague:

> With respect to every question of law and fact that you contend is at issue in this case, identify each that you contend is common to the purported class(es).

13

Easy Money loaned money and charged excessive fees to the people who used them.

Plaintiff Sheila Bellizan's Response to Defendants [sic] First Set of Interrogatories and Requests for Production at § F (unpaginated), attached hereto as Exhibit B.

The plaintiffs' claims, which are based on allegations of misrepresentations and fraud, do not meet the commonality requirement. The federal courts of this circuit have conclusively held that fraud actions are particularly unsuitable for class certification:

> Commonality is satisfied if there is at least one issue whose resolution will affect all or a significant portion of the putative class. However, fraud class actions "cannot be certified when individual reliance will be an issue." The various allegations against the [defendants] contain elements of fraud and/or defalcation and/or intentional misrepresentation. All of the representations that the Plaintiffs claim are fraudulent are not necessarily identical for each of the potential class members. . . . Because there is no proof of common reliance and common fact regarding the type of fraudulent representations that were made to the putative class members, there is no commonality in this case.

*In re FirstPlus Fin., Inc.,* 248 B.R. 60, 74-75 (Bankr. N.D. Tex. 2000) (quoting *Castano*, 84 F.3d at 745). *Accord Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 674 (7th Cir. 2001); *In re Jackson Nat. Life Ins. Co. Premium Litig.,* 183 F.R.D. 217, 222 (W.D. Mich. 1998); *In re Ford Motor Co. Bronco II Product Liability Litig.,* 177 F.R.D. 360, 373 (E.D. La. 1997).

In *Riley v. Compucom Systems, Inc.,* No. A398-1876L, 2000 WL 343189, at *1 (N.D. Tex. Mar. 31, 2000), the district court denied certification of a putative class alleging racial discrimination and retaliation under Title VII. Despite the plaintiffs' claims that defendants' policies and practices constituted common questions of law and fact, the court found commonality lacking:

> Even when the common issues [of defendants' employment policies and practices] are considered, the individualized facts relevant to each class member's situation are an unavoidable part of the fact finder's analysis. In other words, the common issues in this case are not "applicable in the same manner" to each potential class member. *See Falcon*, 457 U.S. at 155. Because this individualized proof is necessary, a class action "is not an economical or efficient way of processing the complaints of the proposed class." *Trevino v. Holly Sugar Corp.*, 811 F.2d 896, 905 (5th Cir. 1987) (affirming denial of class certification because commonality and typicality requirements not met).

*Id.* at 2. In the instant case, Bellizan and McMahon base their claim that commonality is met on their assertion that "all the issues surrounding the liability of the defendants are common to all members of the class" and that "identical testimony" will be presented. Nothing could be further from the truth. Each plaintiff's claim will require a mini-trial on the factual circumstances of each loan transaction, which would be especially detailed concerning rollovers and split loan transactions.

As to the proposed Split Transaction Subclass, the "circumstances surrounding the transactions in question will dictate the answer." *In re Buckles,* 189 B.R. 752, 761(Bankr. D. Minn. 1995); *see also In re LifeUSA,* 242 F.3d 136, 147 (3d Cir. 2001) (concluding that the district court erred in failing to consider how "individual adjudications of causation, reliance" and the defendants defenses would impact on the Rule 23 predominance requirement). In *Buckles,* the court identified the specific factors relevant to an analysis whether the defendant, there, as here, had engaged in improper "loan splitting" as including the following:

1.   the debtor's purposes in applying for credit, and the needs he was seeking to meet by obtaining financing;
2.   the debtor's expectation as to the number and sequence of financial commitments he would make in order to obtain the funds he sought

          to borrow;

3.      the means, length, and clarity of the creditor's communications to the debtor about its proposals for loan terms;

4.      the creditor's internal policies and controls for structuring extensions of credit, particularly with reference to initial "enabling" loans to finance the costs of application for a larger loan;

5.      the extent to which the creditor's employee articulates such policies to the debtor as a justification for structuring a loan in a particular way;

6.      the nature and results of any bargaining or negotiation on loan amount(s) and terms that went on between the parties.

The most important consideration will be the debtor's awareness and intent, both as they were before the creditor made its commitment and as they were when the debtor assented, tacitly or explicitly, to the way in which the creditor structured the loan.

*Buckles,* 189 B.R. at 761.

Further, as discussed above regarding the lack of definition of the proposed subclasses in this action, the plaintiffs cannot merely allege that because loans were made in this case, there are classes of loan customers who have been subjected to usurious loans:

> But the allegation that such discrimination has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified.  Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims.

*General Tel. Co. of the Southwest,* 457 U.S. 147, 157-58 (1982).  In the instant case, there is a wide gap between (a) the plaintiffs' incorrect allegations that they were subjected to usurious loans, and their unsupported allegations that Easy Money Louisiana's loan transactions were all usurious, and (b) the existence of a class of persons who have

suffered the same injury such that the plaintiffs' claims and the class claims will share common questions of fact and typicality.

Class certification should be denied because plaintiffs have failed to demonstrate that they have met the commonality requirement of Rule 23(a)(2).

### C.   Bellizan and McMahon have not met the typicality requirement.

Bellizan and McMahon do not and cannot satisfy Rule 23(a)(2), which requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(2). *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982) ( "[A] class representative must be part of the class and suffer the same injury as the class members.").

"[T]ypicality refers to the individual characteristics of the named plaintiff in relation to the class." *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). "It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class." *Id.* Bellizan and McMahon fail the Fifth Circuit's requirement that they each suffer the same injury as the putative class members:

> Under principles of standing, the named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Warth v. Seldin*, 422 U.S. 490, 502, 95 S.Ct. 2197, 2207, 45 L.Ed. 2d 343 (1975). In *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed. 2d 534 (1983) . . . the Supreme Court addressed the relationship between standing and class actions. The Court reasoned:
>
>> It is not enough that the conduct of which the plaintiff complains will injure someone. The complaining party must also show that he is within the class of persons who will be concretely affected. Nor does

17

> a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject. 102 S.Ct. at 2784.

*Vuyanich v. Republic Nat. Bank of Dallas,* 723 F.2d 1195, 1200 (5th Cir. 1984). *See also James v. City of Dallas, Texas,* 254 F.3d 551, 563 (5th Cir. 2001) ("[A]t least one named Plaintiff must have standing to seek injunctive relief on each of the claims[.]"). *Accord Prado-Steiman v. Prado,* 221 F.3d 1266, 1279 (11th Cir. 2000) ("[T]he district court must determine that at least one named class representative has Article III standing to raise each class subclaim"); *Ad Hoc Comm. to Save Homer G. Phillips Hosp. v. City of St. Louis,* 143 F.R.D. 216, 220 (E.D. Mo. 1992) (class representatives must have personally suffered injury).

Here, Bellizan and McMahon have not suffered any of the injuries which they contend have been suffered by the putative class members. As analyzed in Section IIB of this Memorandum, the named plaintiffs lack standing. Bellizan and McMahon fail as members of the All Customers Class and the RICO Damages Class because there is no evidence that their loans were usurious, or at twice the usurious rates, respectively. As to the proposed Rollover Subclass, neither named plaintiff in this case had rollover transactions. As to the purported Split Transaction Subclass, neither plaintiff had improper split transactions, so they cannot be members of this class. As to the RICO Injunction Subclass, Bellizan has paid off her 1999 loans to Easy Money Louisiana, so she cannot

18

be a member of this class.[7]

Further, Bellizan and McMahon do not satisfy the typicality requirement because they are subject to defenses inapplicable to the class. *Warren v. Reserve Fund, Inc.,* 728 F.2d 741, 747 (5th Cir. 1984) (presence of a defense peculiar to the named plaintiff justifies the denial of class certification). Easy Money has filed a counterclaim against both Bellizan and McMahon to recover their unpaid loan balances. These debts and counterclaims may also cause Bellizan and McMahon's interests to conflict with the interests of the putative class members.

Finally, the claims in this case involve individual determinations as to the facts surrounding the circumstances of each plaintiff. Bellizan and McMahon's sole support for their assertion that their claims are typical of those of all putative class members is a vague statement that "defendants offered loans to each class number using standard forms and practices." Plaintiffs' Memorandum at 18. This is not a "form" case, and, as stated above, the documents and loan terms varied. The plaintiffs' claims also depend upon, among other things, what each individual was told or was not told by Easy Money Louisiana employees, what each person understood, the particular questions that were asked, the particular answers given, and the manner in which each loan was repaid. *See Buckles, supra.* Because the determinations required in this case are inherently individual and fact-specific, it is virtually impossible to have a typical class representative in this case. As the Northern District of Texas has stated:

---

[7]    The only loans Bellizan is suing on were made in 1999, although she also took out loans in the year 2000. She has not repaid all of her 2000 loans, and is subject to a counterclaim by Easy Money Louisiana.

> For the same reasons that commonality is not present, typicality is absent. Various types of fraud and the reliance on those alleged frauds permeate the allegations made by the Plaintiffs. Since reliance on those alleged frauds will require individual analysis, each party's fraud may be unique to themselves alone. Unique claims are not typical claims and, therefore, typicality does not exist.

*In re FirstPlus Fin., Inc.*, 248 B.R. 60, 75 (Bankr. N.D. Tex. 2000).

Bellizan and McMahon lack standing and their claims are subject to defenses unique to their situation. As such, their claims are clearly not typical of any class and class certification should be denied.

### D.   The adequacy of representation requirement has not been met.

The named plaintiffs have failed to meet Rule 23(a)(4), which requires proof that "the representative parties will fairly and adequately protect the interests of the class." The Fifth Circuit recently elaborated on the plaintiffs' burden of proving adequacy, rejecting the district court's conclusion that adequacy "is presumed in the absence of specific proof to the contrary." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481 (5th Cir. 2001). The named plaintiffs' lack of credibility renders them inadequate representatives. Further, Bellizan and McMahon are insufficiently familiar with the case.

### 1.   McMahon's lack of honesty disqualifies her as an adequate representative.

McMahon testified untruthfully in her deposition. The named plaintiff's dishonesty disqualifies her as a class representative, creates defenses that make her not typical, and results in fundamental conflicts of interest with putative class members and their counsel.

A plaintiff's honesty and integrity are important considerations in allowing him or her to represent a class. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949);

20

*Savino v. Computer Credit, Inc.,* 173 F.R.D. 346, 353 (E.D.N.Y. 1997) ("[C]ourts are free to consider the honesty and trustworthiness of the named plaintiff when determining his or her suitability as a class representative."); *Kline v. Wolf*, 88 F.R.D. 696, 699-700 (S.D.N.Y. 1981), *aff'd*, 702 F.2d 400 (2nd Cir. 1983); 7A C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE § 1766 at 632-34.

The failure of a plaintiff to testify truthfully at a deposition is sufficient to allow a district court to conclude that the plaintiff is an inadequate class representative. *Kline*, 88 F.R.D. at 699. *See also Margaret Hall Found., Inc. v. Atlantic Fin. Mgm't.,* No. 82-2534-T, MDL No. 584, 1987 WL 15884, at *7 n.3. (D. Mass. Jul. 30, 1987); *Cohen v. Laiti*, 98 F.R.D. 581, 583 (E.D.N.Y. 1983). In *Kaplan v. Pomerantz*, 132 F.R.D. 504 (N.D. Ill. 1990), it was determined that a plaintiff seeking to represent a class lied at his deposition. *Id.* at 510. The court held that:

> In light of these instances of false deposition testimony, the Court cannot in good conscience allow this case to continue as a class action with plaintiff serving as the class representative. . . . Plaintiff may be correct in asserting that the subjects of his statements are of marginal relevance to this lawsuit; nonetheless, they evince a willingness to give intentionally false and misleading testimony in an effort to further his interests in this litigation. Under these circumstances, allowing him to prosecute this case as a class action would not be fair to the Court, to the defendants, or to the other individuals whose interests plaintiff purports to represent.

*Id.* Courts have specifically denied certification where a plaintiff has lied about questions regarding involvement in previous lawsuits. In *Brider v. Nationwide Credit Inc.,* No. 97-3830, 1998 WL 729747 (N.D. Ill. Oct. 14, 1998), the court denied certification, reasoning as follows:

> Plaintiff was being more than evasive in answering questions at her

deposition. Plaintiff repeatedly gave false answers. This repeated denial of being involved in other litigation certainly pulls into question plaintiff's honesty and adequacy of her ability to represent the entire putative class. Thus, plaintiff's deposition testimony certainly leaves her vulnerable to attack on cross examination when the case goes to trial.

*Id.* at *4.

In her deposition, McMahon was asked and responded as follows:

> Q.    Have you ever been involved in a lawsuit before this lawsuit, either as a plaintiff or as a defendant?
> A.    Not really, no, not that I can remember.

Deposition of Johnetta McMahon at 11:12-16., attached hereto as Exhibit C.    In her

Response to Defendant's First Set of Interrogatories and Requests for Production,

McMahon was asked and responded as follows:

> Q:    Describe in detail, and state the full caption of, any actions filed in any state, federal or bankruptcy court, either pending, dismissed or otherwise resolved in the last ten (10) years in which you were a party.
> A:    I have never been a party in any other lawsuit in the last ten years.

Plaintiff Johnetta McMahon's Response to Defendants [sic] First Set of Interrogatories and

Requests for Production at ¶ J, attached hereto as Exhibit A.

If fact, McMahon has been involved in at least <u>four</u> lawsuits.  In *Touch of Class,*

McMahon sued the City of New Orleans and a bar called Touch of Class Lounge for

damages in the amount of three hundred five thousand seven hundred and fifth dollars

($350,000.00) resulting from her arrest for battering a police officer.  *Johnetta Elow*[8] *v. The*

*"Touch of Class,"* No. 84-21440, Civil District Court, Division "J," Petition attached hereto

---

[8]    McMahon testified in her deposition in this case that McMahon is her first husband's name; Elow is her second husband's name, and she still uses both names.  Deposition of Johnetta McMahon at 5:15-25, attached hereto as Exhibit C.

as Exhibit D.  The litigation continued for more than five years, not exactly the kind of lawsuit that might slip one's mind during a deposition.    In her deposition taken in connection with that case, she testified that she had previously filed two separate lawsuits and was awarded damages in each.  Deposition of Johnetta Elow [McMahon] ("Touch of Class Deposition") dated February 6, 1986 at 12:21-25–13:1-19, excerpts of which are attached hereto as Exhibit E.

During her deposition taken in connection with the instant case, McMahon was specifically asked about her past criminal record:

> Q.    Have you been convicted of any crimes?
> A.    No.
> Q.    Have you been arrested for any crimes?
> A.    No.

12: 18-23.

In addition to the 1984 arrest for battering a police officer and resisting arrest, however, McMahon was arrested on charges related to shoplifting in 1974.   Touch of Class Deposition at 14:3-5, attached hereto as Exhibit E.  McMahon was also asked by Easy Money Louisiana whether she had ever been deposed, to which she answered: "I think I had a deposition taken years ago, but I can't remember what it was pertaining to." Deposition of Johnetta McMahon at 11:19-21, attached hereto as Exhibit E.  Given McMahon's multiple lawsuits and the exhaustive seventy-seven (77) page deposition in Touch of Class, Easy Money maintains that it would not be unfair to infer that this answer is less than candid.

**2.     The named plaintiffs lack sufficient knowledge about the case and their roles as class representatives.**

Bellizan and McMahon have shown an alarming lack of knowledge about the case and their responsibilities as class representative. While proposed class representatives need not be sophisticated in the law, they are required to be reasonably knowledgeable about the cause of action in their role as class representative. Class representatives who demonstrate "an alarming unfamiliarity with the suit" should be rejected. *See Greenspan v. Brassler,* 78 F.R.D. 130, 133 (S.D.N.Y. 1978).

Throughout their depositions, Bellizan and McMahon demonstrated an alarming unfamiliarity with the instant suit. Among other things, McMahon testified that she: was not "aware" of the "particulars" regarding the identity of the defendants because she "leave[s] that to [her] lawyers to figure out," 46:4-8; did not remember whether the copy of the complaint she saw was signed, 48: 22-25; did not know what the "program was going to be" or "what the agenda was" that counsel for plaintiffs intended for the instant suit, 50:20-25; did not remember whether the copy of the complaint she saw had a filed stamp, i.e., whether the copy was a draft or a filed pleading, 56:14-15; had no understanding of the time frame involved in the instant suit, 57:12-13; had not heard of the Racketeer Influenced and Corrupt Organization Act, 57:19-22; had not heard of the Louisiana Deferred Presentment and Small Loan Act "in really those terms," 58:3-8; was aware of the Louisiana Consumer Credit Law only because she heard of it "in life" and "on TV," 58: 9-17; had "no idea" what damages she might be entitled to in this case, 58:18-21; did not "plan to pay any costs," 59: 4-5; and had "no idea" what kind of recovery she might get

24

from any award to the class, 59:6-9, attached hereto as Exhibit C.

Bellizan testified that she: "absolutely" did not know how she became a representative of the class, 81:24-25–82:1-2; thought she remembered that the complaint was signed before she saw it, 83:2-3; was not asked to proofread or make changes to the Complaint before it was signed, 83:9-11; had not heard of the Racketeer Influenced and Corrupt Organizations Act, 83:16-19; heard about the Louisiana Small Loan Act after the complaint was filed, 84:1-3; had not heard about the Louisiana Deferred Presentment and Small Loan Act, 84:4-7; had heard about Louisiana Consumer Credit Law "on television or whatever," 84:8-16; did not know who is responsible for paying costs, 141:8-10; did not know what the fee arrangements are for plaintiffs' counsel, 142:3-7; and did not know what a split loan transaction was, 145:1-3, attached hereto as Exhibit F. Bellizan has, according to her own testimony, neither met with nor discussed this case with other proposed class members.[9]

Under these circumstances, the lack of knowledge displayed by Bellizan and McMahon disqualifies them as class representatives. *See Griffin v. GK Intelligent Systems, Inc.,* 196 F.R.D. 298, 302 (S.D. Tex. 2000) (Plaintiffs who had little to no supervisory role over lead counsel, did not participate in litigation decisions, did not receive regular cost/expense information, and only learned of activity in the case when

---

[9]    Defendant Easy Money Louisiana propounded an interrogatory to Bellizan, asking her to "identify and described any communication by your or your attorneys, either directly or indirectly, with any member of the putative class regarding this action, its pendency, or any allegations or averment in your Complaint." Bellizan responded that "Mr. Wilkins' office has talked with the other plaintiff in this action. Mr. Fisher's office has talked with the other plaintiff in this action." Plaintiff Sheila Bellizan's Response to Defendants [sic] First Set of Interrogatories and Requests for Production at ¶ M, attached hereto as Exhibit B.

they were copied on pleadings already completed, failed to bear their burden of proving their adequacy of representation of the proposed class.); *Butterworth v. Quick & Reilly, Inc.,* 171 F.R.D. 319. 323 (M.D. Fla. 1997) ("plaintiff failed to demonstrate that she is familiar with the facts of the current case sufficiently enough to represent the proposed class"); *Dalton v. MFA Enters., Inc.,* 1996 WL 379105, at *6 (M.D. Fla. Jul. 1, 1996) (plaintiff found inadequate based on unfamiliarity with facts of the case and the class members she represented); *Lubin v. Sybedon Corp.,* 688 F.Supp. 1425 (S.D. Cal. 1988) (inadequate knowledge of circumstances underlying suit); *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 185 F.R.D. 172, 175 (S.D.N.Y. 1999) (representative inadequate where his "substantial lack of understanding of the claims in the case as well as his lack of communication with counsel renders him unable to fairly and adequately protect the interests of the class.").

## III. Bellizan and McMahon have not satisfied any of the three subsections of Rule 23(b).

Even if Bellizan and McMahon had satisfied the general class action requirements of Rule 23(a), their failure to meet any one of the requirements under Rule 23(b) warrants the denial of certification.

As an initial matter, the plaintiffs have not even moved the court for the relief they have cursorily briefed.   In their Motion for Certification, plaintiffs moved the Court for certification under Rule 23(c)(1) and stated that the RICO Injunction Subclass "should be certified" pursuant to Rule 23(b)(2). Plaintiffs' Motion for Class Certification at (unpaginated) 1 and § E.   The plaintiffs have not moved for certification under Rule

23(b)(1) (A) or (b)(3). In their Memorandum in Support of Certification, the plaintiffs claim that the requirements of Rule 23(b)(1)(A) and 23(b)(2) have been satisfied. Plaintiffs' Memorandum at 21-26. Plaintiffs do not, however, brief and/or support their claim for certification of a class under Rule 23(b)(2).

These pleading, briefing and discovery response deficiencies support Easy Money Louisiana's claim that the plaintiffs have failed to bear their burden of proving entitlement to certification under Rule 23.

## A.    The plaintiffs are not entitled to certification under Rule 23(b)(1)(A).

Bellizan and McMahon have not met the requirements of Rule 23(b)(1)(A), which provides that a class certification is justified only when "the prosecution of separate actions would create a risk of inconsistent or varying adjudications with respect  to individual members of the class which would establish incompatible standards of conduct for the party opposing the class[.]"

As support for their claim that the putative class should be certified under Rule 23(b)(1)(A), Bellizan and McMahon state conclusorily:

> The facts of this case justify certification under Rule 23(b)(1)(A). . . . The possibility of achieving inconsistent results and conflicting judgments exists in this case as well. . . . The instant case raises the real likelihood of inconsistent adjudications if the plaintiffs were required to file individual suits.

Plaintiffs' Memorandum at 22-23.

The plaintiffs mischaracterize the purpose of Rule 23(b)(1)(A). As stated by the Supreme Court:

> Rule 23(b)(1)(A) takes in cases where the party is obliged by law to treat

27

> members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners).

*Anchem Products, Inc. v. Windsor,* 521 U.S. 591, 614 (1997) (citation omitted).  The scope of Rule 23(b)(1)(A) certification is narrow, as stated repeatedly by district courts of this circuit:

> Generally, Rule 23(b)(1)(A) is satisfied only in the event that inconsistent judgments in separate suits would trap the party opposing the class in the inescapable quagmire of not being able to comply with one such judgment without violating the terms of another.
>
> No risk of inconsistency exists, however, where a defendant is liable for damages to one plaintiff but not to another, since paying one claimant is not inconsistent with not paying another claimant.
>
> Here, the plaintiffs constitute the parties opposing the class.  The relief they seek is money damages.  It is difficult to see how any plaintiff will be exposed to differing standards of conduct with respect to different defendants should each defendant be sued individually.  A plaintiff may recover from one defendant and not from another, but that possibility does not place him in the position of complying with one judgment while violating another.

*McBirney v. Autrey,* 106 F.R.D. 240, 245 (N.D. Tex. 1985) (citations omitted).  *See also Sembach v. McMahon College, Inc.,* 86 F.R.D. 188, 192 (S.D. Tex. 1980) ("Certification is proper under Rule 23(b)(1)(A) only when different judgments in individual cases would trap the defendant "in the inescapable legal quagmire of not being able to comply with one judgment without violating the terms of another.") (quoting *Walker v. City of Houston,* 341 F.Supp. 1124, 1131 (S.D. Tex. 1971)).

The parties do not face a "quagmire" in this case; individual adjudication of the plaintiffs' claims would not force Easy Money Louisiana to violate the terms of one

28

judgment by having complied with another.  The unique factual circumstances and terms

of each loan transaction mean that no risk of inconsistency exists.   In this case, "[t]he fact

that some plaintiffs may be successful in their suits against a defendant while others may

not is clearly not a ground for invoking Rule 23(b)(1)(A)." *In re Bendectin Prods. Liability*

*Litig.*, 749 F.2d 300, 305 (6th Cir. 1984).   Accordingly, the class is not properly certifiable

under Rule 23(b)(1)(A).

Notwithstanding that Bellizan and McMahon have neither pled nor briefed that the

proposed class are certifiable under Rule 23(b)(1)(B), Easy Money Louisiana maintains

that the proposed classes are not certifiable under this section of Rule 23. As stated by the

Supreme Court:

> Rule 23(b)(1)(B) speaks from a vantage point within the class, [from
> which the Advisory Committee] spied out situations where lawsuits
> conducted with individual members of the class would have the practical if
> not technical effect of concluding the interests of the other members as well,
> or of impairing the ability of the others to protect their own interests.

*Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 833 (1999) (citation omitted).  A recurring type of

action certified under Rule 23(b)(1)(B) is the limited fund case.  *Id.* at 834.  In order to

certify a Rule 23(b)(1)(B) class, however, "the district court, as a matter of law, must have

a fact-finding inquiry on this question and allow the opponents of class certification to

present evidence that a limited fund does not exist. " *In re Bendectin Prods. Liability Litig.*

749 F.2d 300, 305 (6th Cir. 1984).   No party has requested such a inquiry or presented

evidence of a limited fund in this case.

29

**B.     Bellizan and McMahon are not entitled to certification under Rule 23(b)(2).**

Bellizan and McMahon have failed to meet the requirements of Rule 23(b)(2), which requires a showing that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with the respect to the class as a whole." Fed. R. Civ. P. 23.   The plaintiffs' request for certification of a class under Rule 23(b)(2) should be denied for two reasons:  (1) injunctive relief is not available under RICO to a civil plaintiff; and (2) the plaintiffs have stated claims for monetary, not injunctive or declaratory relief.

**1.     Bellizan and McMahon's suit is primarily one for monetary relief.**

Certification under Rule 23(b)(2) is precluded in this case because it is plain to see that Bellizan and McMahon's monetary claims predominate.  The Advisory Committee Notes on Rule 23 state that class certification under (b)(2) "does not extend to cases in which the appropriate relief relates exclusively or predominately to money damages." *Id.* (advisory committee notes).  Bellizan and McMahon, for themselves and the putative class, seek predominantly money damages; therefore, it is crystal clear that suit cannot be maintained as a class action under Rule 23(b)(2).

The Fifth Circuit's holding in *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir. 1998), is controlling here.   In *Allison,* the Fifth Circuit held that "monetary relief 'predominates' under Rule 23(b)(2) when its presence in the litigation suggests that the procedural safeguards of notice and opt-out are necessary, that is, when the monetary relief being sought is less of a group remedy and instead depends on the varying

30

circumstances and merits of each potential class member's case." *Id.* at 413.  This is because Rule 23(b)(2) does not provide for notice and opt-out procedures.  *Id.* Furthermore, the court indicated that "monetary relief predominates in [Rule](b)(2) class actions unless it is incidental to requested injunctive or declaratory relief," and explained that "[i]deally, incidental damages should only be those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established." *Id.* at 415.

In *In re FirstPlus Fin., Inc.,* 248 B.R. 60, 65 (Bankr. N.D. Tex. 2000), the plaintiffs sought certification under Rule 23(b)(2) in an action under RICO, the Truth in Lending Act, and state law alleging that the defendant mortgagee had, among other things, charged excessive loan fees and interest, misrepresented interest rates, and improperly charged expenses.  The court declined to certify the class under 23(b)(2), for reasons that apply equally in this case:

> The Plaintiffs here, in addition to their declaratory/injunctive relief, seek recission, treble damages and attorneys' fees.  Recission, treble damages, and attorneys' fees are major demands for monetary relief.  Therefore, the declaratory relief does not predominate over these potentially huge money demands.

*Id.* at 76.

In *Washington v. CSC Credit Serv. Inc.,* 199 F.3d 263, 264 (5th Cir. 2000), consumers filed suit against reporting agencies, alleging a failure to maintain reasonable procedures.   The district court certified the class on the basis that the reporting agencies' actions made injunctive or declaratory relief appropriate. *Id.* at 269.  Applying *Allison,* the Fifth Circuit reversed and clarified its statement that 'monetary relief predominates . .

31

unless it is incidental:"

> This means that monetary damages must "flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief" and must not depend "on the intangible, subjective differences of each class member's circumstances" or "require additional hearings to resolve the disparate merits of each individual's case." The consumers are seeking actual and punitive damages. It is counterintuitive to say that in their case, declaratory relief, which might hypothetically be used as the basis for future action by the FTC, "predominates" over monetary relief, which will directly and immediately benefit them. Additionally, because the money damages in this case do not flow from the declaratory relief but require separate adjudication, they predominate under *Allison.* Accordingly, the district court erred in finding that the class could be maintained under Rule 23(b)(2).

*Id.* (citing *Allison,* 151 F.3d at 411).

*Allison* and its progeny preclude the certification of a Rule 23(b)(2) class in this action. Just as in *Allison,* any monetary recovery would not flow directly from declaratory relief, but would require separate adjudication of each plaintiff's claims.

**2.     Injunctive relief under RICO is not available to a private plaintiff in a civil RICO action.**

The RICO Injunction Subclass, as a matter of law, may not be certified as a class action under Rule 23(b)(2) because plaintiffs are not entitled to injunctive relief under RICO. In *Religious Tech. Ctr. v. Wollersheim,* 796 F.2d 1076, 1084 (9th Cir. 1986), *cert. denied,* 479 U.S. 1103 (1987), the Ninth Circuit held that "injunctive relief is not available to a private party in a civil RICO action." *Id.* at 1084. The Ninth Circuit recently restated its position that private litigants are not entitled to injunctive relief under civil RICO. *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc.,* 185 F.3d 957, 967 (9th Cir. 1999) (quoting *Wollersheim*).

32

The Fifth Circuit has cited *Wollersheim* with approval, noting that the legislative history of RICO indicates that "Congress believed it had not approved private injunctive remedies and balked at doing so." *In re Fredeman Litig.*, 843 F. 2d 821, 830 (5th Cir. 1988). *See also Bolin v. Sears, Roebuck & Co.*, 231 F. 3d 970, 977 n.42 (5th Cir. 2000) ("There is considerable doubt that injunctive relief is available to private plaintiffs under RICO.").

The Fifth Circuit has also held that when a statute provides a specific remedy, courts should not expand the statute to include other remedies, and that "when a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074, 1085 (5th Cir.), *cert. denied*, 449 U.S. 889 (1980) (citation omitted). Moreover, in *Washington v. CSC Credit Serv., Inc.*, 199 F.3d 263 (5th Cir.), *cert. denied*, 530 U.S. 1261 (2000), the Fifth Circuit reinforced the rule that equitable relief is not available to private plaintiffs under laws that grant the government the right to pursue equitable relief, while expressly granting private plaintiffs the right to seek monetary damages only.

The vast majority of courts that have considered the issue agree with *Wollersheim* that RICO bars a private plaintiff's attempt to seek injunctive relief or "corresponding" declaratory judgment.[10]

---

[10]    *See, e.g., Attorney Gen. of Canada v. RJ Reynolds Tobacco Holdings, Inc.*, 103 F.Supp. 2d 134, 155 (N.D.N.Y. 2000) ("Section 1964(c) limits private plaintiffs to damages and does not provide a basis upon which it may seek injunctive relief."); *First Nat. Bank & Trust Co. v. Hollingsworth*, 701 F.Supp. 701, 703 (W.D. Ark. 1988) (the court "is not authorized" to grant injunctive relief under RICO); *Raymark Indus. v. Stemple*, 714 F.Supp. 460 (D. Kan. 1988) (agreeing with *Wollersheim* that RICO does not allow private parties injunctive relief); *Sterling Suffolk Racecourse v. Burrillville*, 802 F.Supp. 652, 671 (D.R.I. 1992) (holding that it could not grant the plaintiffs injunctive relief under RICO); *cf. Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 848 (1st Cir. 1990) ("[I]t is not clear whether injunctive or other equitable relief is available at

Similarly, the Fourth Circuit recently explained its view that equitable relief is not available to private plaintiffs under RICO:

> While section 1964(c) of RICO grants private parties a right to seek treble damages from a RICO violator, it makes no mention of injunctive relief or declaratory relief. We have therefore stated that "[t]here is substantial doubt whether RICO grants private parties . . . a cause of action for equitable relief." This doubt is especially acute in light of the fact that Congress has declines to authorize whatever remedies for private parties. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 155, 107 S.Ct. 2759, 97 L.Ed. 2d 121 (1987) (noting that Congress failed to enact bill that would have permitted private actions for injunctive relief under RICO). In fact, the only circuit to have squarely addressed the question held that "injunctive relief is not available to a private party in a civil RICO action." *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1084 (9th Cir. 1986).

*Johnson v. Collins Entertainment Co., Inc.*, 199 F. 3d 710, 726 (4th Cir. 1999).

In holding that private litigants have no right to obtain injunctive relief under RICO, the Ninth Circuit noted that, while the United States Congress has specifically granted the Attorney General the power to seek injunctive relief, it did not grant the same power to private litigants. *Wollersheim*, 796 F. 2d at 1086-88.

Under the law of this circuit as well as the majority of other circuits, this suit cannot be maintained as a 23(b)(2) class for injunctive relief.

---

all in private civil RICO actions."); *Trane Co. v. O'Connor Sec.*, 718 F.2d 26, 28 (2d Cir. 1983) (expressing "serious doubt concerning the propriety of granting injunctive relief under any circumstances to private parties alleging securities violations under RICO."); *Dan River v. Icahn*, 701 F.2d 278, 290 (4th Cir. 1983) ("There is substantial doubt whether RICO grants private parties . . . a cause of action for equitable relief."); *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 119 F.Supp. 2d 546, 551 (D. Md. 2000) ("[I]t is unlikely that the Fourth Circuit would allow [the plaintiff] to assert a claim for equitable relief under RICO were the question squarely put before it.").

**C.     Bellizan and McMahon are not entitled to class certification under 23(b)(3).**

Bellizan and McMahon have not moved for class certification under Rule 23(b)(3). Notwithstanding this pleading defect, the plaintiffs have not their burden under Rule 23(b)(3) of proving that: (1) common questions of law or fact predominate over questions affecting only individual members and (2) a class action is superior to other available methods for resolving the controversy.    In this action individual questions clearly predominate over common questions as to every proposed class, and a class action would not be superior to other available methods.[11]

The plaintiffs erroneously assert that common questions of law and fact predominate because the "only proof that might differ" would be the amount of the loans,

---

[11]     This case also implicates privacy issues, further undermining any argument that class certification is superior to other methods of adjudication.  Under Louisiana law, the class action device is inappropriate in cases where the class members' financial privacy might be compromised in the course of the litigation.  In the present case, any person who has done business with Easy Money Louisiana in the last four years will land on a publicly available list of consumers, many of whom will have failed, at one time or another, to timely pay their debts.  Precisely in order to prevent this from happening, Louisiana courts have refused to certify class actions, like this one, on the ground that "[p]eople have an expectation of privacy as to their finances," including "their incomes, expenditures, and *most of all, . . . their loans*." *Bergeron v. Avco Fin. Servs. of N.O.*, 468 So.2d 1250, 1254 (La. App. 4th Cir. 1985) (emphasis added).

In *Bergeron,* the plaintiffs – like Bellizan and McMahon here – sought to represent a class of borrowers complaining that the fees and interest they had been charged on loans were usurious under Louisiana law. *Id.* at 1250.  The trial court refused to certify the class, and the Fourth Circuit affirmed. *Id.* According to the Fourth Circuit, "[t]o certify this as a class action . . . is to make public that which other customers of [the bank] more than likely believed would remain confidential: their loan, the amount of the loan, the interest charges, even their delinquent payments." *Id.* at 1254.  The court emphasized that "[m]ost people do not want these matters placed in the public view," but rather "expect privacy in financial matters." *Id.*  According to the court, although the named plaintiffs had decided to "forego" their own financial privacy by filing suit, it was "not at all certain other customers . . . would make the same decision," especially when "no other suits ha[d] been filed."   *Id.*  For these reasons, the court held that certifying a class would have been improper. *Id.*; *accord Terrebonne Bank & Trust Co. v. Lacombe*, 510 So.2d 78, 82 (La. App. 1st Cir. 1987) (plaintiff's motion to certify a class of borrowers complaining about the fine print on certain auto mortgages denied, in part, to protect the financial privacy of others who had borrowed from the bank but did not wish to make their finances public).  This case also requires denial of class certification.

the location from which the loans were made, and the amount of interest collected from each class member for each loan.  Plaintiffs' Memorandum at 24.  To the contrary, the proof in this case will involve the analysis of each plaintiff's individual claims and the circumstances surrounding the inception and payment of each loan transaction.   The plaintiffs also state that "[i]t is well established that the existence of some separate issue of law and fact, particularly regarding damages, do not negate class action certification." *Id.*  This argument has been rejected as support for certifying a case involving individual liability determinations:

> Plaintiffs rely strongly on the principle that the necessity that each plaintiff prove the amount of his or her damages is generally not an impediment to class certification.  This rule is unobjectionable, but plaintiffs' argument misses the mark.  In the present case, each plaintiff must prove, in addition to the amount of damages, causation in fact and reliance. . . . [P]roof at trial must necessarily focus on whether each individual plaintiff read the . . . disclosure statement, whether each understood the charges being disclosed, whether each would have sought a lower price if the disclosure statement had been accurate, whether there was a lower price available at the time, and whether the person would have obtained that price.  Common issues do not predominate where, as here, the focus must be on minute aspects of individual transactions in order to establish liability.  Where numerous mini-trials are necessary to resolve individual questions of reliance and causation, the benefits of a class action disappear.  If individual proof on these issues is necessary, common questions will not predominate.  It is entirely appropriate to refuse to certify a Rule 23(b)(3) class action where individual proof of reliance would be necessary, thus creating an unmanageable lawsuit in which numerous "mini-trials" on the issue of reliance and damages would overwhelm the common issues.

*Rockey v. Courtesy Motors,* 199 F.R.D. 578, 592-93 (W.D. Mich. 2001).

The All Customers Class and the RICO Damages Subclass, as discussed above, fail as overbroad, because they purport to include every customer who had a transaction with Easy Money Louisiana during a one or four-year period, respectively.  As stated

above, the plaintiffs' own loan documents show different loans documents were used at different times and different fees and rates were charged at different times.   Individual questions would predominate because a liability determination would require individual proof from each plaintiff; a Herculean task that would mushroom into a nightmare for this Court.

Individual questions would predominate as to the Rollover Subclass.  The manner in which each maturing loan was paid off (i.e., with cash or a money order -- resulting in no rollover), or not paid off (possible rollover), would have to be examined as to every loan for every class member.  Individual mini-trials would have to be conducted regarding oral representations made and relied on, the plaintiffs' understanding of any alleged oral representations, and the expectations and/or requests of the individual customers at the time of the loan transaction.  *See Buckles, supra.*

Individual questions would also predominate as to the Split Transaction Subclass.  In *Harris v. Illinois Vehicle Premium Finance*, No. 99-5411, 2000 WL 1307513, at *2 (N.D. Ill. Sep. 12, 2000), the court declined to certify a class alleging that the defendant engaged in "loan splitting," reasoning that:

> This claim . . . would require the Court to delve into the particular circumstances of each transaction to determine whether defendants engaged in "loan splitting" and [the plaintiff] has not explained how these issues can be determined on a class basis. . . [T]he Court believes that this threshold issue is likely to predominate over the common issues[.]

*Id.* at *8 (citations omitted).

It is critical to note that improper loan splitting does not occur unless the customer does not know that the lender has "split" a requested single loan into two separate loans.

37

See MorEquity v. Naeem, 118 F.Supp. 2d 885, 895 (N.D. Ill. 2000) (granting defendant's motion to dismiss "loan splitting" claim because plaintiff requested, applied for and received two separate loans); Rendler v. Corus Bank, N.A., 96 C 7351, 2001 WL 314993, at *4 (N.D. Ill. Mar. 29, 2001) ("Loan splitting focuses on whether the borrower expected to enter into more than one transaction.").

There is no prohibition against Easy Money Louisiana having more than one loan at a time outstanding with a customer. The determination of whether a permitted concurrent loan situation was really a prohibited split transaction would entail exhaustive mini-trials of individual class members' transactions. This fact-specific inquiry of representations, intent, knowledge, materiality and reliance would have to be made for every loan as to each class member. See Buckles, supra.

The proper measure of damages is not simply the amount of fees paid to Easy Money Louisiana for the loans as to each plaintiff. Instead, damages should be based on the price each person would have been able to obtain to borrow the same amount, taking into consideration each plaintiff's credit history, etc., i.e. the difference between the amount actually paid and the lower available price is the damage sum. See, e.g., Lindsey v. Ed Johnson Oldsmobile, Inc., 1997 WL 269627, at *4 (N.D. Ill. May 14, 1997) (Damages analysis involves "whether each individual class member would have received better bargains for their service contracts (or foregone contracts altogether) had they known that [the dealer] was retaining a portion of the service contract fee, and if so, how much less each would have spent.").

Individual questions would also predominate as to the RICO Damages Subclass.

In *Summit Properties, Inc. v. Hoechst Celanese Corp.*, 241 F.3d 556, 562 (5th Cir. 2000), the Fifth Circuit clarified that "when civil RICO damages are sought for injuries resulting from fraud, a general requirement of reliance by the plaintiff is a commonsense liability limitation." The Fifth Circuit affirmed the district court's conclusion that reliance is a necessary predicate for establishing proximate cause under RICO.

Because each member of a class must establish his reliance on the alleged misrepresentations, class certification as to these issues would be a managerial nightmare. *See Castano v. American Tobacco Corp.*, 84 F.3d 734, 745 (5th Cir. 1996); *Maralscalco v. Intern. Computerized Orthokeratology Society*, 181 F.R.D. 331, 340 (N.D. Miss. 1998); *Mack v. GMAC*, 169 F.R.D. 671, 680 (M.D. Ala. 1996); *Buford*, 168 F.R.D. at 360; *see also Banks v. New York Life Ins. Co.*, 737 So. 2d 1275, 1281 (La. 1999) ("A fraud class action cannot be certified when individual reliance will be an issue").

Plaintiffs' RICO claims clearly lack commonality. In *Young v. Ray Brandt Dodge, Inc.*, 176 F.R.D. 230, 233 (E.D. La. 1997), the Eastern District of Louisiana refused to certify a case arising out of an alleged conspiracy under RICO and Louisiana fraud law. The court denied certification on the basis that Rule 23(b)(3) commonality was lacking, reasoning as follows:

> The plaintiffs would disguise a duck as a swan. They urge that this is merely a "form case" and that the Court need only look at the insurance disclosures made on the retail installment contracts that were signed by the plaintiffs. . . . A host of factors must be considered to prove fraud under RICO and state fraud laws. They are the very structure of the proof of these cases. These factors include: (1) the information actually given to each plaintiff; (2) the sales presentation made to each plaintiff; (3) the retail installment contract and the disclosures made on the forms; (4) whether a plaintiff read the information provided to him; (5) if the plaintiff did not read

39

the information, . . . his understanding of the transaction; (6) representations made to and by the plaintiff; (7) the questions asked by each plaintiff at the time of the sale and the answers provided; (8) the extent to which the plaintiff relied on the information given by the defendant; (9) the plaintiff's motivation for purchasing the insurance . . .; (10) whether the plaintiff would, or could have, bought the policy for a lower price if he had known about the commission paid to the dealers.

*Id.*

In this case, even if plaintiffs succeed in proving defendants are liable under the various theories in plaintiffs' complaint, any monetary relief awarded will depend on the varying circumstances of each plaintiff's case.  As the Fifth Circuit clarified in *Summit Properties, Inc. v. Hoechst Celanese Corp.,* 214 F.3d 556, 562 (5th Cir. 2000), each plaintiff's recovery would depend on whether that plaintiff relied on the defendants' alleged misrepresentations regarding the loans issued.  Therefore, plaintiffs' damages do not flow automatically from injunctive or declaratory relief.  Plaintiffs' monetary claims under RICO require the same analysis of individualized injuries and thus predominate.   As stated recently by the Fifth Circuit:

> Claims for money damages in which individual reliance is an element are poor candidates for class treatment, at best.  We have made that plain. We recently held that "a fraud class action cannot be certified when individual reliance will be an issue."  Recently, in *Bolin v. Sears, Roebuck & Co.,* we applied that rule to civil RICO claims.  We do so again, concluding that the district court erred as a matter of law in certifying this class because the predominance requirement could not be met.

*Patterson v. Mobil Oil Corp.,* 241 F.3d 417, 419 (5th Cir. 2001) (citing *Bolin,* 231 F.3d at 978-79) (footnotes omitted).

Bellizan and McMahon have also not demonstrated that certification under Rule 23(b)(3) is superior.  The fact that the defendant has a compulsory counterclaim against

40

the plaintiffs renders the class action inferior to individual suits:

> [T]he counterclaims asserted in this case are compulsory and . . . they render the class action device inferior, rather than superior, to individual suits. This court must consider the fact that if a class action were certified, then the defendant would be compelled to counterclaim against many of the class members, to the economic damage . . . of those counterclaimed against. For reasons relating both to management and to the interest of the class members, it is the court's opinion that in this case a class action should not be certified.

*Carter v. Public Fin. Corp.*, 73 F.R.D. 488, 496 (N.D. Ala. 1977). *See also Heaven v. Trust Co Bank,* 118 F.3d 735, 738 (11th Cir. 1997) (the existence of compulsory counterclaims is a proper Rule 23(b)(3)(A) consideration in denying class certification); *Parker v. George Thompson Ford, Inc.*, 83 F.R.D. 378, 381 (N.D. Ga. 1979) (denying class certification because individual adjudications were required on defendants' counterclaims against putative class members and individual questions would predominate over class issues.). As the Fifth Circuit noted in *Castano*, a finding that individual questions predominate "implicates the court's superiority analysis: The greater the number of individual issues, the less likely superiority can be established." *Castano,* 84 F.3d at 745 n. 19.

In sum, Bellizan and McMahon have not demonstrated how common issues can possibly predominate. To the contrary, the individualized reliance, causation and damages issues predominate as to every proposed subclass.

## IV.   **Conclusion**

Bellizan and McMahon have failed to bear their burden that the five ill-defined and overbroad proposed classes meet the requirements of Rule 23(a) and (b). To the contrary, the evidence clearly demonstrates that this case is unsuitable for class certification.

Defendants request, therefore, that this Court deny the motion for class certification.

Respectfully submitted, this 4th day of September, 2001.

_____

**DAVID S. WILLENZIK (#13487)**
**ANTHONY ROLLO, T.A. (#01133)**
**STEPHEN W. RIDER (#2071)**
**LISA D. MUNYON (#24575)**
**McGLINCHEY STAFFORD**
**A Professional Limited Liability Company**
**643 Magazine Street**
**New Orleans, Louisiana 70130**
**Telephone: (504) 586-1200**
**Facsimile: (504) 596-2800**

**ATTORNEYS FOR EASY MONEY OF LOUISIANA, INC., EASY MONEY HOLDINGS, INC., EASY MONEY OF VIRGINIA, INC., DAVID L. GREENBERG, TAMMI VAN GORDER and JEROME GREENBERG**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served upon all counsel of record by facsimile, and by depositing same in the U.S. Mail, postage prepaid and properly addressed, this 4th day of September, 2001.

_____

**STEPHEN W. RIDER**

282666 1

42

# SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED